# In the United States Court of Federal Claims

No. 18-523C
(Filed: August 29, 2019)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | **Army Housing Entitlements; Reserve Component; 37 U.S.C. § 403; Joint Travel Regulations ¶¶ 10002.A, 10414.A.1-3, 10428.B; Rule 12(b)(1); Motion to Dismiss Rule 52.2; Motion to Remand.** |
| **BRADLEY WOLFING, et al.,** | |
| Plaintiffs, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |

<u>Patrick J. Hughes</u> and <u>Michael E. Lyons</u>, Patriots Law Group of Lyons & Hughes, P.C., 5819 Allentown Road, Suitland, MD 20746, for Plaintiffs.

<u>Joseph H. Hunt</u>, <u>Robert E. Kirschman, Jr.</u>, <u>Douglas K. Mickle</u>, and <u>Daniel K. Greene</u>, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. <u>Major Michael Townsend, Jr.</u>, United States Army, Of Counsel.

---

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO REMAND

---

**WILLIAMS**, Senior Judge.

Plaintiffs, a group of seven former and current officers in the reserve component of the United States Army ("Army"),[1] claim entitlement to two allowances for housing while serving on active-duty tours in Europe from May 2014, to the present, during which they were "unaccompanied," i.e., unauthorized to relocate their dependents. Plaintiffs claim entitlement to a basic allowance for housing in the United States ("BAH") and outside the United States ("OHA") pursuant to 37 U.S.C. § 403 and Chapter 10 of the Department of Defense Joint Travel Regulations ("JTR"). Plaintiffs allege that the Army denied them a housing allowance to which they were entitled and acted with gross negligence by willfully misapplying the JTR. Specifically, Plaintiffs

---

[1]    Plaintiffs are Colonel Bradley Wolfing, Majors James Copas, Ryan Mirabal, Louis Morelli, and Captains Alexander Gardiner, Timothy Kibodeaux, and William Schneck.

contend that in 2016, the Army wrongly began subjecting them to JTR provisions that govern active-duty component pay and housing entitlements, instead of reserve component entitlements, causing the loss of their second housing entitlement and resulting in substantial financial losses.

Defendant moved to dismiss the complaint for lack of subject-matter jurisdiction contending that Plaintiffs' claim sounds in tort because their action is based on the negligent performance of a noncontractual duty. In the alternative, Defendant moved to remand Plaintiffs' case to the Secretary of the Army for submission to the Army Board for the Correction of Military Records ("ABCMR"). Because Plaintiffs seek monetary damages based upon a money-mandating statute and regulations, this case falls within this Court's Tucker Act jurisdiction. As such, Defendant's motion to dismiss is denied. The Court grants Defendant's alternative motion for remand because the ABCMR may grant Plaintiffs complete relief.

## **Background**[2]

All Plaintiffs voluntarily performed unaccompanied active-duty tours of 365 days or less as part of the Army's reserve component in Europe to support contingency operations. Plaintiffs were not authorized to ship household goods at the expense of the Government to their duty stations in Europe. While on their individual tours for various time periods between May 2014 to the present, Plaintiffs were ordered to "live on the economy" - - to utilize their housing allowances to finance off-base housing, which is required when Government quarters are unavailable at or near their duty stations. All of the officers, except Major Morelli, have one or more dependents. The six officers who have dependents were on "unaccompanied orders," meaning they were not authorized to relocate their dependents to their duty station at Government expense. Additionally, the six officers with dependents represented to the Army that their dependents were residing in the United States during their tours. All Plaintiffs received BAH starting on the first day of their tours, and the six Plaintiffs with dependents received an additional family separation housing allowance for overseas housing ("FSH-O") for part of their tours.[3]

Plaintiffs allege that the unavailability of Government quarters entitled them each to two base housing allowances for the duration of their tours, BAH and OHA, citing 37 U.S.C. § 403 and Joint Travel Regulations ¶¶ 10002.A, 10428.B. Plaintiffs allege that sometime in 2016, the Army changed its official interpretation of the JTR relating to eligibility for reserve component housing allowances and as a result, began retroactively applying active duty component pay and housing allowance entitlements to reserve component soldiers. Plaintiffs claim this change removed their second base housing allowance, denying them and many reserve component soldiers appropriate BAH benefits. Plaintiffs characterize the Army's revised interpretation of the applicable JTR and retroactive application of active duty component pay as a willful and grossly negligent disregard of 37 U.S.C. § 403 and the applicable JTR.

---

[2]     This background is derived from Plaintiffs' complaint and the appendix to Defendant's motion to dismiss.

[3]     Plaintiffs dispute that they were paid FSH-O allowances and instead claim that the monies they received were OHAs. Pls.' Sur-reply 15.

Defendant describes the circumstances differently. Defendant submits that pursuant to the JTR, all seven Plaintiffs were entitled to only one base housing allowance, either BAH or OHA, depending on the place where the soldier was located when entering active duty, citing JTR ¶ 10428.B. Def.'s Mot. 4-5. The regulation provides:

> A Reserve Component member called/ordered to active duty in support of a contingency operation is authorized BAH/OHA for the duration of the tour. If the Reserve Component member receives a permanent change of station order authorizing HHG [household goods] transportation, BAH/OHA is based on the new Primary Duty Station. However, if the member is called or ordered to active duty and a permanent change of station order is not issued, BAH/OHA rate is based (paid) on the primary residence location at the time called/ordered to active duty . . . .

JTR ¶ 10428.B.

Members with dependents may also receive an additional housing allowance, FSH-O, as long as they satisfy three conditions: (1) dependent transportation to the Permanent Duty Station was not authorized as Government expense under 37 U.S.C. § 476; (2) dependents did not reside in the permanent duty station vicinity; and (3) Government quarters were not available for assignment to the member. JTR ¶ 10414.A.1-3. In Defendant's view, at the time Plaintiffs were called to active duty, based on their representations in financial processing forms submitted to the Army, the six Plaintiffs with dependents appeared to be eligible for the FSH-O allowance because they met these three conditions. Def.'s Mot. App. 113. Plaintiffs received BAH starting on the first day of their tours, and the six Plaintiffs with dependents received FSH-O for part of their tours. Major Morelli, however, was erroneously paid an additional OHA allowance for a portion of his tour.[4]

Rather than a change in official Army interpretation of the JTR, Defendant points to the findings of an investigation by the Army's Wiesbaden Criminal Investigation Command ("CID") as the cause of Plaintiffs' pay changes. In 2016, CID conducted a criminal investigation concerning representations the six Plaintiffs with dependents made to the Army in order to receive the FSH-O additional housing allowance. Army CID concluded that the six Plaintiffs moved their dependents overseas or had their dependents reside with them at their duty stations for more than 90 days, thus rendering them ineligible for FSH-O because they no longer satisfied the second condition of JTR ¶ 10414.A: that their dependents did not reside in the vicinity of the permanent duty station. In addition, the Army determined that it inadvertently paid Major Morelli both BAH and OHA. Def.'s Mot. App. 114. The Army's Office of the Staff Judge Advocate and Compensation/Entitlements Branch upheld these findings. Def.'s Mot. App. 109. As a result, the

---

[4] Major Morelli, an officer with no dependents, was authorized to receive only BAH. Soldiers without dependents or unaccompanied orders overseas who must live on the economy receive BAH. However, they can obtain a waiver to receive OHA instead of BAH to cover housing expenses. Major Morelli elected to receive OHA. In error, Major Morelli was paid both OHA and BAH. Def.'s Mot. App. 113-14.

Army concluded that it had overpaid all Plaintiffs by one housing allowance - - FSH-O in the case of the six officers with dependents, and OHA in the case of Major Morelli. Def.'s Mot. App. 114.

Defendant alleges that the Army equitably sought to recoup the overpayments. Thus, instead of making the six officers forfeit all of their housing allowances until the debt was repaid, the Army identified for recoupment the housing allowance that had been paid at the lower rate. In the case of the six officers with dependents, this was the BAH. In the case of Major Morelli, the debt for the OHA overpayment was cancelled upon determining that Major Morelli was not at fault for the overpayment.

After their BAH was recouped, Plaintiffs initiated multiple inquiries in response to the Army CID's findings and the claimed misinterpretation of the JTR through their chain of command, as well as through the Defense Finance and Accounting Service ("DFAS"), the Inspector General, and Congressional Representatives. See Def.'s Mot. App. 115-25; Pls.' Resp. App. 8-20.

On October 18, 2018, the Army's Financial Management Support Center concluded that "[a]ll six officers with dependents who have filed suit received the appropriate basic allowance for housing based on the accurate location of their dependents." Def.'s Mot. App. 114.

## Discussion

### Jurisdiction

The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). "The Tucker Act itself does not create a substantive cause of action . . . ." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). If a claim is to fall within the Court's Tucker Act jurisdiction, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." Aviation & Gen. Ins. Co., Ltd. v. United States, 121 Fed. Cl. 357, 361-62 (2015) (citing Fisher, 402 F.3d at 1172). Further, the substantive law the plaintiff identifies must be "money-mandating." Id. (citing United States v. Mitchell, 463 U.S. 206, 217 (1983)).

For the purposes of Tucker Act jurisdiction, a statute or regulation is money-mandating if it "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s]." Fisher, 402 F.3d at 1173 (quoting Mitchell, 463 U.S. at 217). In determining whether a statute is money-mandating, courts evaluate the extent to which the statute imposes an obligation on the Government to pay money when statutory conditions are met. Samish Indian Nation v. United States, 657 F.3d 1330, 1335 (Fed. Cir. 2011). The Federal Circuit has noted that, in limited situations, the money-mandating requirements may be satisfied even when the Government reserves discretion over the payment of funds when the statute: "(1) provides 'clear standards for paying' money to recipients; (2) states the 'precise amounts' that must

be paid; or (3) as interpreted, compels payment on satisfaction of certain conditions." Id. (quoting Perri v. United States, 340 F.3d 1337, 1342-43 (Fed. Cir. 2003)).

Before the Court may proceed to the merits of the action, Plaintiffs must first establish subject-matter jurisdiction by a preponderance of the evidence. Hardie v. United States, 367 F.3d 1288, 1290 (Fed. Cir. 2004); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Tindle v. United States, 56 Fed. Cl. 337, 341 (2003). The Court must dismiss the action if subject-matter jurisdiction is found to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). When ruling on a motion to dismiss pursuant to Rule 12(b)(1), the Court assumes that all factual allegations are true, and will construe the complaint in a manner most favorable to the plaintiff. Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

In considering a motion to dismiss, the Court primarily considers the allegations contained in the complaint, but is not limited by its four corners. Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (internal citation omitted). The Court may also look to "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Id. When a document is not incorporated by reference, the court may "nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Bell/Heery v. United States, 106 Fed. Cl. 300, 307 (2012), aff'd, 739 F.3d 1324 (2014).

**A Money-Mandating Statute: 37 U.S.C. § 403**

In their complaint, Plaintiffs rely upon 37 U.S.C. § 403 as the money-mandating source of this Court's Tucker Act jurisdiction. This provision states:

> a member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for housing at the monthly rates prescribed under this section or another provision of law with regard to the applicable component of the basic allowance for housing.

37 U.S.C. § 403(a)(1).

Defendant does not dispute that Section 403(a)(1) is money-mandating because Plaintiffs were entitled to "a basic allowance for housing" while receiving basic pay during their respective tours in Europe. Id.; Def.'s Mot. 9-10. Instead, Defendant characterizes Plaintiffs' claims as the Government's negligent performance of a noncontractual duty and relies upon another subsection of § 403 - - 37 U.S.C. § 403(k)(2) - - to argue that Plaintiff's claim sounds in tort. Id. Section 403(k)(2) provides:

> Any determination made under this section with regard to a member of the uniformed services is final and is not subject to review by any accounting officer of the United States or a court, *unless there is fraud or gross negligence*.

37 U.S.C. § 403(k)(2) (emphasis added).

5

That this statutory language permits judicial review of a housing-allowance determination only when alleged to be grossly negligent, does not convert the cause of action from a Tucker Act statutory violation claim for monetary damages, into a tort claim for compensatory damages due to negligence. Plaintiffs allege that the Army interpreted and applied 37 U.S.C. § 403 in a grossly negligent manner by erroneously determining that active duty component JTR provisions applied to reserve component soldiers. The conduct complained of is not either the tort of negligence arising under common law or the Federal Tort Claims Act ("FTCA"), but rather is a gross failure to follow a statutory mandate to pay reservists housing allowances to which they are entitled.

This claim for housing allowances - - a claim for money that is mandated by statute - - is a quintessential Tucker Act claim, not a negligence claim for damages for an injury due to a breach of a duty owed. This Court has routinely exercised its Tucker Act jurisdiction to address monetary statutory claims in many contexts. See, e.g., Randolph v. United States, 129 Fed. Cl. 301 (2016), aff'd, 2017 WL 2558256 (Fed. Cir. 2017) (seeking back pay, involuntary and improper discharge); West v. U.S., 103 Fed. Cl. 55 (2012) (seeking backpay and correction of his status following alleged illegal discharge); Young v. United States, 57 Fed. Cl. 441 (2003) (seeking backpay for time spent in confinement serving a sentence that was later set aside); Holley v. United States, 33 Fed.Cl. 454 (1995) (seeking entitlement to overseas housing allowance). The fact that judicial review of entitlement to a housing allowance is conditioned upon a finding that the Army acted with gross negligence in denying such allowance does not alter the fundamental character of the claim. Rather, the claim remains one for entitlement to housing allowances, and the remedy remains payment of monies owed due to a grossly negligent or fraudulent denial of a statutory entitlement. The Tucker Act's jurisdictional requirements have been satisfied because Plaintiffs have invoked 37 U.S.C. § 403, a money-mandating statute and have sufficiently pleaded a claim for grossly negligent denial of housing allowances under that statute. See 37 U.S.C. § 403(k)(2).

**Motion to Remand**

In the alternative, Defendant requests that the Court remand this matter to the Secretary of the Army for submission to the ABCMR. Defendant argues that remand is in the interest of justice due to the Army's mission of fairly treating all soldiers, the Army's expertise in these types of claims and access to interpretations of the relevant JTR provisions. In addition, Defendant notes that the ABCMR would be able to grant all relief that Plaintiffs seek. Plaintiffs contend that remanding their claim is unnecessary as they have already filed similar complaints through their chain of command, the Inspector General, Congressional Representatives, and DFAS. Plaintiffs assert that "because the way their system is designed, the ABCMR will likely seek advisory opinions from the same people who have already misinterpreted the Army's legal requirements to date." Pls.' Resp. 27.

The Tucker Act gives the Court of Federal Claims the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2) (2012); see R. Ct. Fed. Cl. 52.2; accord Ward v. United States, 133 Fed. Cl. 418, 427-32 (2017); Reaves v. United States, 128 Fed. Cl. 196, 200-03 (2016); Stuart v. United States, 123 Fed.Cl. 413, 422-23 (2015). Under Rule 52.2, "[a]n order remanding a case must (A) include such direction as the Court deems proper and just; (B) establish the

duration of the remand period, not to exceed 6 months; (C) specify the extent to which court proceedings will be stayed during the remand period; and (D) designate a party to report to the court, every 90 days or less, on the status of the remand proceedings.  R. Ct. Fed. Cl. 52.2(b)(1).

Here, remand is appropriate to afford the ABCMR an opportunity to grant Plaintiffs the relief they are seeking - - to correct their military personnel records and award payments resulting from such corrections if warranted.  See 10 U.S.C. § 1552(c)(1); Roth v. United States, 378 F.3d 1371, 1382 (Fed. Cir. 2004) ("[A] correction board may entertain any kind of application for correction . . . .ranging from changing the terms of a discharge, or the citation of awards received, to amending records that include officer effectiveness reports passover decisions by selection boards or special selection boards, and discharge orders." (citing Porter v. United States, 163 F.3d 1304, 1311 (Fed. Cir. 1998)).  Remand will not prejudice Plaintiffs as the ABCMR may award them complete relief.

## Conclusion

Defendant's Motion to Dismiss Plaintiffs' complaint for lack of jurisdiction is **DENIED**.[5]

Defendant's Motion to Remand is **GRANTED**.

The Court **REMANDS** this matter to the Secretary of the Army for referral to the Army Board for Correction of Military Records for administrative action pursuant to Rule 52.2 and orders:

a. The Army Board for Correction of Military Records is directed to compile a full administrative record and reassess Plaintiffs' entitlement to their claimed housing allowances in accordance with 37 U.S.C. § 403 and Chapter 10 of the DoD Joint Travel Regulations.

b. Defendant shall file a report with the Court on the status of the remand proceeding 90 days from issuance of this order and every 90 days thereafter.

c. Defendant shall provide the Court with the Army Board for Correction of Military Records' decision within 180 days.

The case is **STAYED** for all purposes for the duration of remand proceedings.

s/Mary Ellen Coster Williams  
**MARY ELLEN COSTER WILLIAMS**  
**Senior Judge**

---

[5] Defendant's motion to strike pages 1-4 and 6-21 of Plaintiffs' sur-reply is **DENIED.**